UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANE M. HENDRICKS, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> NOVAE CORPORATE UNDERWRITING, ) <br> LTD., ) <br> ) <br> Defendant. ) | No. 13 C 5422 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiffs Diane M. Hendricks and Hendricks Holding Company, Inc. (collectively, "Hendricks")[1] brought suit against Defendant Novae Corporate Underwriting, Ltd.'s ("Novae") insured, Cunningham Lindsey Claims Management, Inc. ("Cunningham Lindsey"), in Texas state court. Hendricks and Cunningham Lindsey settled the underlying litigation by entering a consent judgment against Cunningham Lindsey and having Cunningham Lindsey assign its rights under its insurance policy with Novae to Hendricks. Hendricks then filed the instant suit against Novae in this Court seeking a declaration that Novae breached its duty to indemnify Cunningham Lindsey and for breach of contract. Novae has filed a motion for judgment on the pleadings or alternatively summary judgment [35], contending that the assignment is void and the consent judgment does not bind it in this action.[2] Although the Court finds that the assignment is valid, because the judgment is not binding on Novae under Texas law and thus

---

[1] Plaintiff Hendricks Holding Company, Inc. was substituted for American Patriot Insurance Agency, Inc. ("American Patriot"). American Patriot filed for bankruptcy in 2010, with a Chapter 7 Trustee thereafter appointed for the bankruptcy estate. The Court will refer to Hendricks Holding Company and American Patriot interchangeably and will collectively refer to the Plaintiffs as "Hendricks."

[2] Because the parties have filed a joint statement of undisputed material facts and attached at least one document that is not part of the pleadings, the Court will treat Novae's motion as one for summary judgment.

Novae has no indemnity obligations for that judgment, summary judgment is granted for Novae on Hendricks' declaratory judgment claim. But because the Court is unable to determine on the present record whether Hendricks is entitled to relief on the breach of contract claim that is not dependent on the consent judgment, the Court reserves ruling on that claim.

## BACKGROUND

Novae and certain other underwriters at Lloyd's, London issued an insurance policy identified as Policy No. 823/FD0000493 (the "Policy") to Fairfax Financial Holdings, Cunningham Lindsey's parent company. As a subsidiary of Fairfax Financial Holdings, Cunningham Lindsey is an "Assured" under the Policy. The Policy does not include a duty to defend but includes a duty to indemnify, subject to a $1,000,000 retention. Loss is defined broadly, however, and includes "reasonable and necessary legal fees incurred by the Assureds in the defense or investigation of any Claim." Ex. A to Compl. at 67.

In 2002, Hendricks filed a breach of contract and negligence action against Cunningham Lindsey and others in the Northern District of Illinois. The parties litigated the proper venue for the action, with the case ultimately dismissed and refiled against Cunningham Lindsey in Texas state court in December 2004. In the underlying action, Hendricks alleged that it entered into agreements with a group of insurers to provide insurance products to roofing contractors (the "Roofers' Program"). Cunningham Lindsey was contracted to administer claims under the policies issued as part of the Roofers' Program. Although Cunningham Lindsey was required to set appropriate reserves for claims, Hendricks alleged that the reserves Cunningham Lindsey established were unreasonably low and led to the unwarranted renewal of some policies, the underpriced renewal of others, and other mismanagement. Hendricks claimed substantial losses, with an expert opining that damages reached $5,120,000. Cunningham Lindsey's expert opined

instead that Hendricks only suffered $25,000 in damages, the amount that Cunningham Lindsey failed to recover for American Patriot.

Cunningham Lindsey provided Novae with written notice of the litigation on October 5, 2006. In September 2007, Cunningham Lindsey informed Novae that it was planning a mediation conference with Hendricks and that, based on Hendricks' demand, settlement could place Cunningham Lindsey over the Policy's $1,000,000 retention. Novae declined coverage on September 18, 2007. Novae also filed a declaratory judgment action against Cunningham Lindsey and Hendricks in this district, seeking a declaration that it did not have indemnity obligations to Cunningham Lindsey in the underlying litigation. That action was dismissed without prejudice for lack of ripeness because the Policy's retention had not been exhausted by way of settlement or judgment.

On or about April 23, 2012, Hendricks and Cunningham Lindsey reached a settlement of the underlying litigation. The settlement agreement states that it was entered into "after engaging in extensive good faith, arm's-length discussions with respect to the claims and defenses that were or could have been raised by [Hendricks] or Cunningham [Lindsey]" in the underlying litigation. Ex. C to Compl. § 6.2. The settlement agreement provides for entry of a stipulated judgment in favor of Hendricks and against Cunningham Lindsey for $5,120,000. That stipulated judgment was entered by the Texas state court on May 10, 2012. The settlement agreement also provides for payment to Hendricks of the remaining $1,000,000 limit of liability under another insurance policy issued by American International Specialty Lines Insurance Company to Cunningham Lindsey. Under the settlement agreement, Cunningham Lindsey assigned Hendricks all its rights to payment under the Policy in exchange for Hendricks' agreement not to execute on the stipulated judgment against Cunningham Lindsey. Finally,

Cunningham Lindsey agreed to cooperate with Hendricks in its attempt to recover under the Policy and agreed not to respond to any requests for information regarding the nature of the settlement agreement or the consent judgment and instead to refer such inquiries to counsel for Hendricks.

After the settlement agreement was finalized and the stipulated judgment entered, Hendricks filed suit against Novae in this Court on July 20, 2013. This was the first notice Novae received that the underlying litigation had been resolved.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**ANALYSIS**

Novae argues that it is not liable under the Policy for the judgment entered in the underlying litigation because, under Texas law, that judgment is unenforceable and the assignment of Cunningham Lindsey's claim to Hendricks is void as against public policy.[3] Novae also argues that Cunningham Lindsey suffered no loss as a result of the settlement and thus Novae's indemnity obligations have not been triggered. Hendricks contests the application of Texas law to the validity of the assignment, arguing that Illinois law should apply instead. Hendricks also contends that, even if Texas law applies, Novae's motion should be denied. Finally, Hendricks maintains that coverage under the Policy was triggered when the consent judgment was entered, regardless of the fact that Hendricks agreed not to execute the judgment against Cunningham Lindsey. The Court turns first to the validity of the assignment.

**I.     Validity of the Assignment**

   **A.     Choice of Law**

Novae contends that Texas law applies to determine the validity of Cunningham Lindsey's assignment of its claim under the Policy to Hendricks, while Hendricks contends that Illinois law applies. Because the Court has diversity jurisdiction over this case, it must apply Illinois' choice of law rules to determine the applicable substantive law. *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004). The settlement agreement includes an Illinois choice of law provision. Ex. C to Compl. § 6.1 ("This Agreement shall be governed by and shall be construed, interpreted, and enforced in accordance with the laws of the State of Illinois, without

---

[3] Novae reserves the right to challenge Hendricks' recovery on other grounds if it does not prevail on the present motion. Specifically, Novae argues that it has coverage defenses that bar Hendricks' attempt at recovery under the Policy and also reserves the right to challenge the reasonableness of Hendricks' settlement agreement with Cunningham Lindsey. Hendricks similarly acknowledges that further discovery must be taken to address the reasonableness of the settlement and it also reserves the right to bring its own motion for summary judgment on the reasonableness and enforceability of the settlement agreement after further discovery has been conducted.

regard to its conflicts of laws principles."). Illinois follows Section 187 of the Restatement (Second) of Conflict of Laws in determining whether to give effect to a choice of law provision. *Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Illinois*, 568 N.E.2d 9, 14, 209 Ill. App. 3d 144, 154 Ill. Dec. 9 (1990). Section 187 provides:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187 (1971). Section 187 has been interpreted to mean that "the parties' choice of law governs unless (1) the chosen State has no substantial relationship to the parties or the transaction or (2) application of the chosen law would be contrary to a fundamental public policy of a State with a materially greater interest in the issue in dispute." *Int'l Surplus Lines*, 568 N.E.2d at 14.

Novae first argues that the choice of law provision in the settlement agreement does not apply here because Novae is not a party to the settlement agreement. *See In re Drs. Hosp. of Hyde Park, Inc.*, 494 B.R. 344, 370 (Bankr. N.D. Ill. 2013) ("The choice of law provision in the Settlement Agreement has no application here because it applies only to the parties to that

6

Settlement Agreement and only to disputes arising out of the negotiation, formation, and construction of the Settlement Agreement. . . . In any event, 'a choice of law or forum clause in a contract is not applicable to a nonparty.'" (quoting *Maldonado v. Creative Woodworking Concepts, Inc.*, 796 N.E.2d 662, 665, 342 Ill. App. 3d 1028, 277 Ill. Dec. 576 (2003))). But the fact that Novae is not a party to the settlement agreement has no bearing on the choice of law question as it pertains to whether that settlement agreement's assignment clause—between Hendricks and Cunningham Lindsay—is valid. Unlike in *Doctors Hospital*, where the dispute was over whether the release of one obligor in a settlement agreement released the co-obligor who was not a party to the agreement, 494 B.R. at 370, here the question to be resolved is the validity of the assignment, which directly implicates the construction of the settlement agreement. That, according to *Doctors Hospital*, is a question to which the choice of law provision contained in the settlement agreement applies. *Id.* (choice of law provision applies "only to disputes arising out of the negotiation, formation, and construction of the Settlement Agreement"). Novae cannot come in and argue offensively that the choice of law clause is inapplicable solely because it is a nonparty seeking to invalidate the assignment. Nor is the choice of law decision binding on Novae as a third party—the Court is not deciding what law governs the coverage decision. *See Maremont Corp. v. Cheshire*, 681 N.E.2d 548, 551–52, 288 Ill. App. 3d 721, 224 Ill. Dec. 233 (1997) (finding that settlement agreement between insured and plaintiff in underlying litigation did not control choice of law question in coverage action). Both sides acknowledge that that question remains an open one. *See* Doc. 38 at 5; Doc. 44 at 6. Thus, Illinois law applies to determine the validity of the assignment unless it "has no substantial relationship to the parties or the transaction" or "application of [Illinois] law would be contrary

7

to a fundamental public policy of a State with a materially greater interest in the issue in dispute." *Int'l Surplus Lines*, 568 N.E.2d at 14.

Novae does not argue that Illinois has no substantial relationship to the parties but rather that the application of Illinois law is contrary to Texas public policy, which has a materially greater interest in the dispute. Because of the risk of collusion between a plaintiff and insured where a settlement agreement includes an assignment of the insured's claim against the insurer, Texas has determined that certain assignments between a plaintiff and an insured are void as against public policy. *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 698 (Tex. 1996). Specifically, Texas law provides:

> a defendant's assignment of his claims against his insurer to a plaintiff is invalid if (1) it is made prior to an adjudication of plaintiff's claim against defendant in a fully adversarial trial, (2) defendant's insurer has tendered a defense, and (3) either (a) defendant's insurer has accepted coverage, or (b) defendant's insurer has made a good faith effort to adjudicate coverage issues prior to the adjudication of plaintiff's claim.

*Id.* at 714. Although Illinois courts have recognized the possibility of collusion and fraud in these situations, Illinois has not adopted the *Gandy* approach, instead requiring "the plaintiff to prove that the settlement it reached with the insured was reasonable before that settlement can have any binding effect upon the insurer." *Guillen ex rel. Guillen v. Potomac Ins. Co. of Illinois*, 785 N.E.2d 1, 14, 203 Ill. 2d 141, 271 Ill. Dec. 350 (2003). Thus, applying Illinois law would be contrary to Texas public policy. And from the facts before the Court, Texas appears to have a materially greater interest in the dispute than Illinois—the underlying litigation was pending in Texas state court, the settlement agreement was executed by way of entry of judgment in that Texas case, and Cunningham Lindsey had its principal place of business in Texas. The only connections to Illinois are that American Patriot was headquartered in Illinois and that a payment under the settlement agreement was to be made to the Chapter 7 Trustee for American Patriot in

8

Illinois. Thus, the Court concludes that Texas, not Illinois law, applies to the question of whether the assignment effectuated in the settlement agreement is valid.

B.     **Validity under Texas Law**

Novae contends that, under Texas law, the assignment is invalid. Although a third party generally lacks standing to attack an assignment to which it is not a party, a third party may challenge an assignment on a ground that would render it void. *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 225 (5th Cir. 2013) (citing Texas law); *Bank of Am. Nat'l Ass'n v. Bassman FBT, LLC*, 981 N.E.2d 1, 7, 2012 IL App (2d) 110729, 366 Ill. Dec. 936 (2012). As discussed above, the Texas Supreme Court held in *Gandy* that an insured's assignment of its claims against its insurer to a tort claimant is invalid under certain circumstances. *Gandy*, 925 S.W.2d at 714. Specifically, for an assignment to be held invalid, the following criteria must be met: (1) the assignment must be made prior to the adjudication of the plaintiff's claim against the insured in a fully adversarial trial, (2) the insurer must have tendered a defense, and (3) either (a) the insurer must have accepted coverage, or (b) the insurer must have made a good faith effort to adjudicate coverage prior to adjudication of the plaintiff's claim. *Id.*

Novae argues that all the *Gandy* elements are met, contending that the second element "is a non-factor because Novae had no duty—and indeed no right—to defend [Cunningham Lindsey] under the Policy." Doc. 35-1 at 11. But the Court cannot just ignore the second element; "*Gandy*'s invalidation applies only to cases that present its five unique elements." *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 673 (Tex. 2008) ("*Gandy*'s holding was explicit and narrow, applying only to a specific set of assignments with special attributes."). Nor can the Court rewrite the second element, as Novae suggests in a

9

footnote; instead, it must apply *Gandy* as written.[4] Because courts have consistently found *Gandy* to apply only to a narrow set of circumstances where the insurer has tendered a defense, *Gandy* does not invalidate the assignment here, where it is undisputed that Novae never tendered a defense to Cunningham Lindsey. *See ATOFINA*, 256 S.W.3d at 673 n.70 (noting that insurer never tendered a defense, "a fact *Gandy* purported to rely upon"); *Great Am. Ins. Co. v. Hamel*, 444 S.W.3d 780, 802 (Tex. App. 2014) (*Gandy* invalidation did not apply where there was no evidence insurer ever tendered a defense, accepted coverage, or sought to adjudicate coverage issues before judgment was entered in the underlying case); *Yorkshire Ins. Co. v. Seger*, 407 S.W.3d 435, 441 (Tex. App. 2013) (under *Gandy*, assignment valid where insurers refused to tender defense), *petition for review granted* (Tex. Mar. 13, 2015); *Midwestern Indem. Co. v. Laikin*, 119 F. Supp. 2d 831, 842 n.5 (S.D. Ind. 2000) (noting that *Gandy* would not apply to invalidate assignment where insurer had not provided a defense to its putative insureds). Thus, the Court does not find the assignment invalid under Texas law and must proceed to Novae's argument that the consent judgment is not binding on it.[5]

## II. Enforceability of the Consent Judgment Against Novae

Novae contends that even if the Court deems the assignment valid, Hendricks cannot enforce the underlying judgment against Novae. Because the consent judgment was rendered in Texas, and this Court must give that judgment full faith and credit, the effect of the judgment is governed by Texas law. *See* 28 U.S.C. § 1738; *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S.

---

[4] The fact that the parties agree that Novae did not have a duty to defend, in the traditional sense, is immaterial to determining whether the criteria for invalidating an assignment under *Gandy* are satisfied.

[5] The Court notes that this is the same outcome as would result from the application of Illinois law, under which Novae acknowledges the assignment would be valid. Thus, the choice of law decision ultimately is rendered superfluous. *See Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 909, 2014 IL 116389, 381 Ill. Dec. 493 (2014) ("[A] choice-of-law determination is required only when the moving party has established an actual conflict between state laws.").

367, 374, 116 S. Ct. 873, 134 L. Ed. 2d 6 (1996) ("Federal courts may not 'employ their own rules . . . in determining the effect of state judgments,' but must 'accept the rules chosen by the State from which the judgment is taken.'" (omission in original) (citation omitted)). Novae again relies on *Gandy*, where the Texas Supreme Court stated that, "[i]n no event, however, is a judgment for plaintiff against defendant, rendered without a fully adversarial trial, binding on defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defendant's assignee." *Gandy*, 925 S.W.2d at 714; *see also id.* at 719 ("In no event should a judgment agreed to between plaintiff and defendant be binding on defendant's insurer."). According to Novae, this means that Hendricks has no judgment that it can enforce against Novae, as the consent judgment was entered by the Texas state court after Hendricks settled with Cunningham Lindsey and without a fully adversarial trial and is one that Hendricks, as Cunningham Lindsey's assignee, is now attempting to enforce against Cunningham Lindsey's insurer.

Hendricks contends, however, that *Gandy*'s statement with respect to the binding nature of the judgment "pertains only to the evidentiary weight to be afforded to an agreed judgment obtained in an underlying action in a subsequent suit against an insurer." Doc. 46 at 1. Hendricks suggests that the Texas Supreme Court's more recent case, *ATOFINA*, in which the Texas Supreme Court stated that *Gandy*'s invalidation of assignments was limited to "cases that present its five unique elements" demonstrates that *Gandy* applies only to "the *enforceability* of assignments, not to judgments," and that the court in *ATOFINA* "implicitly recognized" that insurers can contest the amount of damages agreed to by an insured and its assignee where an assignment of claims has occurred. *Id.* at 2 (citing *ATOFINA*, 256 S.W.3d at 673–74). But *ATOFINA* did not address the binding nature of consent judgments entered without a fully

11

adversarial trial on insurers in actions by assignees. *See ATOFINA*, 256 S.W.3d at 673 (noting that the case did not fall within *Gandy* because there had been no assignment).

Hendricks' reliance on *Yorkshire Insurance Co. v. Seger* is also not persuasive. In *Seger*, the plaintiffs made a settlement offer to the defendant insured in the underlying action, which was within the policy limits of the insured's policy. 407 S.W.3d at 436. The insurers refused to settle, however, and so the case proceeded to a trial, at which the insured was not represented and did not offer evidence. *Id.* at 437. A judgment was entered, after which the insured assigned the rights under the policy to the plaintiffs. *Id.* The plaintiffs then filed not a coverage action as here but rather what is known in Texas as a *Stowers* action, seeking to recover damages for the insurers' wrongful refusal to defend the insured and their failure to settle the claim when a demand was made within the policy limits. *Id.*; *see G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544 (Tex. Comm'n App. 1929). The plaintiffs relied on the judgment rendered in the underlying case as proof of their damages, which the Texas Court of Appeals found to be error because that judgment did not result from a fully adversarial trial and thus violated *Gandy*'s prohibition on using such judgments as evidence in cases against insurers in actions by plaintiffs as the insureds' assignees. *Seger*, 407 S.W.3d at 442–43. Although the court noted that the plaintiffs could have presented other evidence of damages, this was because the claim was not one for indemnification for the judgment amount but rather for the "[i]nsurers' failure to provide a defense and negligence in failing to settle the [plaintiffs'] suit within policy limits." *Id.* at 443. Thus, *Seger* does not indicate that *Gandy*'s holding is limited to the binding nature of the

judgment amount, and not to liability as well, in a coverage action brought by an insured's assignee against the insurer.[6]

Indeed, Hendricks' argument was explicitly rejected by the Texas Court of Appeals in *First General Realty Corp. v. Maryland Casualty Co.*, 981 S.W.2d 495, 500 (Tex. App. 1998). There, the assignee attempted to distinguish *Gandy* as only "discuss[ing] the binding effect of the judgment on damages, not liability," where the assignee and the insured had not agreed upon a damages amount in the underlying judgment. *Id.* But the appellate court did not find that "distinction meaningful," instead holding that the underlying agreed judgment was not binding on the insurer. *Id.* This is the natural reading of *Gandy*, as the Texas Supreme Court did not distinguish between liability and damages but rather stated generally that "[i]n no event should a judgment agreed to between plaintiff and defendant be binding on defendant's insurer."[7] *Gandy*, 925 S.W.2d at 719; *see also Burney v. Odyssey Re (London) Ltd.*, No. Civ.A.2:04-CV-032-J, 2005 WL 81722, at *4 (N.D. Tex. Jan. 14, 2005) (plaintiffs had no right to recover against insurer based on state court judgment, which was unenforceable under *Gandy*), *aff'd*, 169 F. App'x 828, 829 (5th Cir. 2006) (agreeing that under *Gandy*, plaintiffs could not enforce agreed-upon judgment against insurer); *Stroop v. N. County Mut. Ins. Co.*, 133 S.W.3d 844, 850 (Tex.

---

[6] The Court is aware that the Texas Supreme Court granted a petition for review in *Seger* on March 13, 2015. Because *Seger* addresses a *Stowers* action, however, the Court does not believe it necessary to await the Texas Supreme Court's decision in *Seger* before issuing this Opinion.

[7] That statement is followed by dicta that "[i]f an insurer's liability is to be litigated in an action by a plaintiff as a defendant's assignee after such a judgment is rendered, it should be done on the strength of plaintiff's claims rather than the generosity of defendant's concessions." *Gandy*, 925 S.W.2d at 719. If anything, this language supports the Court's conclusion that the consent judgment is not binding on the insurer as to liability and damages, as it could be read to suggest that the issues of liability and damages in the underlying suit should be relitigated in the coverage action. But neither side urges relitigation of the underlying suit—nor does the Court believe that the Texas Supreme Court intended for such a reading of the case, where it was looking for a way to avoid extending litigation and placing the insurer in a position where its defense of the insured's claims was hampered by the insured's non-participation in the defense. *See Stroop*, 133 S.W.3d at 849–50 (discussing difficulties encountered by insurer in "attempt[ing] to reconstruct a defense of" its insured).

App. 2004) (plaintiffs could not recover against insurer under *Gandy* where "there was no judgment rendered after a 'fully adversarial' trial"). Thus, the consent judgment is not binding on Novae in this action.

## III. Effect on Hendricks' Claims

Having found that the Texas consent judgment is not binding on Novae, the Court must determine whether this requires entering judgment for Novae on all of Hendricks' claims or if Hendricks may recover for claims that are not dependent on the judgment. In Count I of the Complaint, Hendricks seeks a declaratory judgment that there is coverage under the Policy for its claim against Cunningham Lindsey and that Novae is obligated to indemnify Cunningham Lindsey for the judgment. The Policy provides that Novae shall pay any "loss," which is defined as "damages, judgements [sic] and Costs, Charges and Expenses." Ex. A to Compl. at 68, 87. "Costs, Charges and Expenses" include "reasonable and necessary legal fees and expenses incurred by the Assureds in the defense or investigation of any Claim." *Id.* at 67. But here, the only alleged "loss" for which Hendricks seeks coverage is the judgment entered in the Texas state court case, which the Court has found not to be binding on Novae. *See* Compl. at 15. Thus, there is no need for the Court to render a coverage determination because the relief Hendricks seeks—recovery of the judgment amount from Novae—is foreclosed by the fact that there has been no "loss" under the Policy.[8]

Hendricks suggests, however, that even if the judgment is found unenforceable, it has other valid claims against Novae, "as it "remain[s] the valid assignee[ ] of *all* of [Cunningham

---

[8] No other loss under the Policy is possible, as the settlement agreement between Hendricks and Cunningham Lindsey included a merger clause that all claims that Hendricks had or could have against Cunningham Lindsey were merged into and included in the judgment. Ex. C. to Compl. § 2.12. Thus, without a binding judgment, Novae's indemnity obligation cannot be triggered. Because the Court finds that the judgment is not binding and Hendricks has not asserted another loss for which it, as Cunningham Lindsey's assignee, is entitled to indemnification, the Court need not address Novae's argument that coverage is not triggered because of the covenant not to execute contained in the settlement agreement.

14

Lindsey's] claims against Novae, including its claim for breach of contract and for indemnification for the amount of the settlement." Doc. 46 at 5. Although the Court rejects Hendricks' argument with respect to indemnification for the amount of the settlement—that amount was merged into the judgment, as evidenced by the settlement agreement itself, *see* Ex. C to Compl. § 2.3 (setting forth not a settlement amount, but an agreement to enter into a stipulated judgment for an agreed amount)—the Court is willing to entertain a more specific argument from Hendricks as to the possible relief to which it would be entitled on its breach of contract claim in light of the Court's findings in this Opinion. *See* Compl. at 15–16 (seeking over $75,000 for Novae's alleged breach of contract, without mention of consent judgment). The Court therefore reserves entering judgment on the breach of contract claim. But because Hendricks does not argue that it is entitled to indemnification on any other valid basis, summary judgment is granted for Novae on Hendricks' declaratory judgment claim.

## CONCLUSION

For the foregoing reasons, Novae's motion for judgment on the pleadings or, in the alternative, summary judgment [35] is granted in part. Summary judgment is granted for Novae on Hendricks' declaratory judgment claim (Count I). The parties should be prepared to discuss what relief, if any, Hendricks may be entitled to under its breach of contract claim (Count II) in light of this Opinion and Order at the status hearing on April 22, 2015. The parties should also be prepared to discuss the effect of this Opinion and Order on Novae's counterclaims.

Dated: April 21, 2015

SARA L. ELLIS
United States District Judge